# CASES

# SUPREME JUDICIAL COURT,

IN THE

ᴠ COUNTY OF CUMBERLAND.

ARGUED AT APRIL TERM, 1847.

---

Ursula F. Robinson *versus* William H. Swett & al.

After the passage of the act establishing a municipal court in Portland and the acts in addition thereto (st. 1821, c. 72; st. 1825, c. 294; st. 1826, c. 324) and before the revised statutes were in force, a justice of the peace had no jurisdiction over complaints under the bastardy act, where both parties lived in Portland, and had no authority to require a bond. A bond, therefore, taken by direction of a justice of the peace, in that place, during that time, under that act, is void, if the parties lived there.

A judgment of affiliation under the process, in which a bond was so taken, does not, in a suit upon the bond, preclude the defendant from questioning the validity of such bond.

Debt on a bond, of which the following is a copy : —

" Know all men by these presents, that we, William H. Swett of Portland, in the county of Cumberland and State of Maine, Truckman, as principal, and Wm. Swett of Portland aforesaid, as surety, are held and stand firmly bound and obliged unto Ursula F. Robinson of Portland aforesaid, Widow, in the full and just sum of two hundred dollars, to the payment of which sum well and truly to be made to the said Ursula F. Robinson, her certain attorney, heirs, executors, administrators or assigns, we bind ourselves, jointly and severally, our heirs, executors

and administrators, firmly by these presents. Witness our hands and seals this fourth day of September, in the year of our Lord one thousand eight hundred and forty. The condition of this obligation is, however, such, that whereas the said Ursula F. Robinson hath, upon her examination upon oath, taken before Charles Harding, Esq. one of the justices of the peace, in and for the county of Cumberland, on the twenty-sixth day of August, in the year of our Lord eighteen hundred and forty, accused the said William H. Swett of being the father of a bastard child, of which she has been delivered, and the said justice hath ordered him, the said William H. Swett to give sureties for his appearance at the District Court for the Western District, next to be holden at Portland, in and for the county of Cumberland, on the first Tuesday of October next, then and there to answer to the said accusation: Now if the said William H. Swett shall appear at said Court, and answer to the said accusation, and abide the order of Court thereon, this *bond* shall be void; otherwise shall remain in full force and virtue.

" Signed, sealed and deliver-⎱ " William H. Swett, [L. s.] ed, in presence of Asa Bailey." ⎰ " William Swett. [L. s.]"

The defendants, with the general issue, filed a brief statement, wherein it was alleged, that the plaintiff, at the time the bond was taken and at the time of the commencement of the suit, was a married woman, having a lawful husband alive; and that the judgment of affiliation, upon the default of W. H. Swett, was illegally and fraudulently obtained; and that the said bond was procured by duress and was void.

At the trial before Whitman C. J. the signatures of the defendants to the instrument declared on, were admitted to be genuine. The plaintiff introduced in evidence a copy of a judgment of affiliation against William H. Swett, rendered upon default in a bastardy process instituted by her against him. There was testimony introduced by each party with respect to the questions, whether the alleged husband of the plaintiff was or was not alive at the times mentioned, and in what manner the process was entered and the default made.

A report was made of the whole evidence, and thereupon it was agreed, that if, upon the evidence, the plaintiff could maintain her action, the defendants were to be defaulted, and the Court were to assess the damages ; and if not, the plaintiff was to become nonsuit.

*A. Haines,* for the defendants, upon the point on which the decision rested, said that it appeared in the case, that all the parties were inhabitants of and resident in Portland during the whole time ; and contended, that the municipal court had, at that time, exclusive jurisdiction of the subject matter of the complaint, and alone had authority to issue the warrant and direct the bond to be taken ; and therefore, that Mr. Harding had no jurisdiction or authority in the matter, and the bond, taken as this was, was entirely void ; not voidable merely, but wholly void. He cited st. 1821, c. 72; st. 1825, c. 294 ; st. 1826, c. 324 ; Paine's C. C. R. 55.

*Fessenden, Deblois & Fessenden,* for the plaintiff, contended, that, as the judgment of affiliation is still in full force, and the condition of the bond was to perform that judgment in all its requirements, the judgment cannot be incidentally reversed in this suit. So long, therefore, as the judgment remains unreversed, it binds the parties to it. The bond was an incident to the prosecution, and a part of the process ; and the judgment rendered in that process is conclusive upon this point in the present case. They also contended, that the justice had concurrent jurisdiction with the municipal court on this subject.

The opinion of the Court was drawn up by

WHITMAN C. J. — This is an action of debt on a bond, which was executed in due form by the defendants, and purports to have been taken in pursuance of the requirements of the statute, c. 72, of 1821, in a bastardy process. The defence is, that the bond is null and void, it having been given to procure the liberation of the principal obligor from arrest in pursuance of a warrant, issued and returnable before a justice of the peace, in the city of Portland, who, it is insisted, had

no authority to issue, or to take cognizance of it, and require the bond to be given. And this depends upon the question, whether the several acts, constituting a municipal court in Portland, gave it exclusive jurisdiction in such matters, between parties in such a process, who were dwellers in Portland.

By an act, c. 294, of 1825, the municipal court was established, with authority to " take cognizance of and exercise jurisdiction over all such matters and things, within" this county, " as justices of the peace may by law take cognizance of, and exercise jurisdiction over, and under like restrictions and limitations, and in like manner as they may exercise the same." And by an act, c. 324, of 1826, it was enacted, that such municipal court should have exclusive and original jurisdiction of all cases of forcible entry and detainer arising in said city ; " and in all cases in which said court has now jurisdiction ; and in which both parties interested, or in which the party interested as plaintiff, and the persons summoned as trustees, shall be inhabitants of or residents in said town of Portland, it shall have exclusive original jurisdiction." If this act had stopped at the conclusion of these words, viz : — " and in all cases in which said court has now jurisdiction," the meaning would have been much more comprehensive than can be believed to have been intended by the Legislature. It would have ousted, not only justices of the peace, dwelling in Portland, but all those living in the county of Cumberland, of every species of jurisdiction, both civil and criminal, which never could have been designed. And therefore the words, which immediately follow, which, after a comma, beginning with the copulative ' and', must be regarded as qualifying and limiting their meaning, and as providing, that such exclusive jurisdiction must be confined to the cases specified, viz : — " in which both parties interested, or in which the party interested as plaintiff, and the persons summoned as trustees shall be inhabitants of, or residents in said town of Portland."

Hence it follows, that the defence must depend upon the question, whether the complainant and the accused, in a bas-

tardy process, are to be denominated parties; and can be considered as interested as such in the subject matter of the controversy, within the meaning of the act. The plaintiff contends, that they are not, and that the exclusive jurisdiction provided for has reference only to cases of forcible entry and detainer, arising in Portland, and to actions at common law. But if such had been the meaning of the Legislature it would have been easy for them so to have expressed it. They have used language much more comprehensive. It is, that all cases where both parties, &c. A bastardy prosecution is a case, and it is not a criminal proceeding; if it were, it might not, under the statutes referred to, be within the exclusion, although it might have been otherwise, if the prosecution had originated since the enactment of the Rev. St. Such a proceeding has been held, though partaking of the nature of a criminal proceeding, to be a civil suit. *Wilbur* v. *Crane*, 13 Pick. 284; *Williams* v. *Campbell*, 3 Metc. 209. The complainant and the accused, then, must be denominated parties: and are they not both interested in the proceeding? The object of the prosecutrix is to compel the accused to contribute to the support of a child, without which its support must devolve entirely upon her. She, then, is a party interested. That the accused is also a party interested is without question. It follows, that this is a case in which there are parties interested adversarily to each other. And it is not questioned that they were both inhabitants of Portland. According to the literal import of the statute, therefore, the case must be deemed to be embraced in the exclusion; and although the reason on the part of the plaintiff is specious, and at first seemed to have great force, yet we, upon consideration, do not find it to be such as will warrant a departure from the natural import of the language used. The bond therefore must be held to be void.

But it has been argued, that, there having been a judgment of affiliation under the process in which the bond originated, it is not now competent for the defendants to question its validity; and that the bond was an incident to the pros-

ecution, and a part of the process. The bond, however, though it may be an incident to the prosecution, cannot be deemed to be a part of the process, any more than a bail bond in an action at common law. The purposes of this bond are nearly if not quite identical with those. In both cases they are to compel appearance, and intended to render the obligors responsible in case of avoidance. The process in either case might go forward to final judgment, though no bond were given for appearance. The bond, therefore, at most, is but a casual incident; and, if unduly obtained, the first opportunity the obligors would have to show it, would be when sued thereon. No question could arise directly in reference to its validity, during the pendency of the suit. Suppose a sheriff should have a writ, in which he was a party, against an individual, and should arrest him, and cause him to give bail, and judgment should thereupon be entered against him, it is believed that suffering judgment to go by default would be no bar to a defence upon *scire facias*, that the bond had been exacted and taken by one, who had no authority to require it. Such a question could not arise during the pendency of the suit, nor until *scire facias* was issued upon the bond. That would afford him his first opportunity to question its validity. So, in the case before us, a bond was exacted by one having no authority to require it. No question could be made concerning its validity till put in suit. We may suppose another case still more apposite, perhaps. A person, pretending to be a justice of the peace, when in fact he was not, might have a person arrested, and brought before him, charged with the commission of some crime, and require him to recognize to appear at some court, having cognizance of the offence, and he should there be convicted, but should avoid sentence, and a default should be entered upon his recognizance, might he not show, upon *scire facias*, that it had been exacted and taken by one, who had no authority to take it, and so avoid his liability upon it? In all such cases the stipulations would have been obtained by duress. They would

have been given to obtain liberation from unlawful imprison-
ment, and, in such case, are never held to be obligatory.